| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| COREY SIPKIN PHOTOGRAPHY LLC,<br><br>Plaintiff,<br><br>– against –<br><br>NEW YIRUI CULTURE NY, INC.,<br><br>Defendant. | **MEMORANDUM & ORDER**<br><br>24-CV-8354 (ERK) (JAM) |

KORMAN, *J.*:

Plaintiff Corey Sipkin Photography LLC brought this action asserting claims under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, against Defendant New Yirui Culture NY, Inc.  Defendant has not appeared, and the Clerk of Court entered its default.  Plaintiff now moves for a default judgment under Federal Rule of Civil Procedure 55(b).

## BACKGROUND

Plaintiff is a professional photography company that commercially licenses certain photographs.  Compl. ¶ 10, ECF No. 1.  Plaintiff created a photograph of people marching across the Brooklyn Bridge in protest of the death of George Floyd (the "Photograph").  *Id.* ¶ 2. On June 30, 2020, Corey Sipkin, a member of Plaintiff, obtained the rights and a copyright registration from the United States Copyright

1

Office ("USCO"). *Id.* ¶ 18; ECF No. 23 ¶¶ 1, 8–9; ECF No. 23-2. Sipkin transferred all rights and licenses of the Photograph to Plaintiff by way of written transfer agreement on or about January 17, 2023. Compl. ¶ 19.

Plaintiff published the Photograph by commercially licensing it to the New York Post, a third-party media company, for the purpose of display and/or public distribution. *Id.* ¶ 15. The Photograph was published as part of a news article on June 1, 2020 by the New York Post. *Id.* ¶ 16. The Photograph, as originally published in the New York Post, included a "gutter credit" attributing authorship of the Photograph to Sipkin. *Id.* ¶ 67; ECF No. 1-3.

Defendant is the owner and operator of a website at domain www.yr-ny.com (the "Website") and is a "sophisticated media company which owns a comprehensive portfolio of digital marketing platforms." Compl. ¶¶ 3, 21–25. The Website is monetized in that it hosts events, contains network promotions, and advertises companies. *Id.* ¶ 24. On or around April 9, 2024, Defendant, without permission or authorization from Plaintiff, began displaying a copy of the Photograph on the Website. *Id.* ¶ 30; ECF No. 1-2. The Website's display of the Photograph did not include the "gutter credit" attributing the work to Sipkin that was present when published by the New York Post. Compl. ¶¶ 68–69; ECF No. 1-2.

Plaintiff sent Defendant two letters prior to initiating this litigation requesting that Defendant provide proof of license to use the Photograph or to otherwise remove

it from the Website. *Id.* ¶¶ 51–52; ECF No. 22-8. After receiving no response from Defendant, Plaintiff initiated this action by filing the Complaint on December 5, 2024. *See* Compl. ¶ 53. Plaintiff asserts one claim of direct copyright infringement in violation of 17 U.S.C. § 501 *et seq.*, and one claim of removal and/or alteration of copyright management information in violation of 17 U.S.C. § 1202(b) against Defendant. *Id.* ¶¶ 56–76. Plaintiff served Defendant by filing a copy of the Complaint with New York Secretary of State on January 10, 2025. ECF No. 10; *see also* N.Y. Bus. Corp. Law § 306. At the Court's direction, Plaintiff also sent the Complaint to Defendant via email and to Defendant's business address via certified mail. ECF Nos. 12, 13. Defendant failed to answer or appear, and Plaintiff requested and received a Certificate of Default on May 6, 2025. ECF Nos. 16–19. Plaintiff now moves for the entry of default judgment under Federal Rule of Civil Procedure 55(b), seeking statutory damages pursuant to 17 U.S.C. § 504(c), statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), and attorneys' fees and costs pursuant to 17 U.S.C. § 505. *See* ECF No. 20 at 13–16, 17–19, 25–26.

## **STANDARD OF REVIEW**

Rule 55 governs motions for default judgment and establishes a two-step process. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, the non-defaulting party must obtain a Certificate of Default from the Clerk of Court by providing proof of service and an affidavit showing that the party against whom the

default is sought has not answered or appeared. Fed. R. Civ. P. 55; E.D.N.Y. L.R. 55.1. Second, if a Certificate of Default is granted, the factual allegations in the complaint are deemed true and admitted, and the court evaluates whether those facts state a valid cause of action and warrant the relief sought and whether material issues of fact remain. *See Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012). Courts also look to the factors used to weigh motions to set aside default judgments to determine if a default judgment is warranted, namely "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

## DISCUSSION

### I.     Plaintiff Satisfied the Procedural Step

Plaintiff has satisfied Rule 55's procedural step by presenting the documentation required by Local Civil Rule 55.1 and obtaining a Certificate of Default. ECF No. 19. Service was proper under Federal Rule of Civil Procedure 4(h), which allows parties to serve entities in the manner prescribed by the law of the state in which the district court is located. *Obot v. Citibank South Dakota, N.A.*, 347 F. App'x 658, 659 (2d Cir. 2009). Plaintiff served Defendant by delivering the Complaint and Summons to a clerk at the Office of the Secretary of State of the State

4

of New York, ECF No. 7, a valid method for serving a corporation under New York law, *see* N.Y. Bus. Corp. Law § 306 (McKinney 2023).

## II. Plaintiff Satisfies the Substantive Step

### A. Plaintiff Pled a Viable Claim for Copyright Infringement

To establish a claim of direct copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–109 (2d Cir. 2001); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Plaintiff satisfies both elements.

Under the Copyright Act, "[a] certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c); *see also MerchDirect LLC v. Cloud Warmer, Inc.*, No. 17-CV-4860, 2019 WL 4918044, at *7 (E.D.N.Y. Sept. 30, 2019). Plaintiff establishes ownership of a valid copyright by appending a notice of copyright registration that the USCO issued in 2020 for a work produced the same year. *See* ECF No. 23-2. Moreover, in failing to answer the Complaint, Defendant does not challenge the validity and ownership of the copyright. *See Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 22-CV-5942, 2023 WL 5703698, at *5 (E.D.N.Y. Sept. 5, 2023).

5

To establish infringement, a copyright holder must demonstrate that the alleged infringer is "copying," *i.e.*, engaging in the copyright owner's exclusive rights as provided by 17 U.S.C. § 106 with regard to the original and protected aspects of the work. *See Jeremiah*, 2023 WL 5703698, at *5–6. The Photograph is an original work created through artistic choices, to which Plaintiff has obtained the rights. Compl. ¶¶ 17–19, 57–58. Plaintiff did not license, permit, or assign to Defendant any right to use the Photograph. *Id.* ¶¶ 30, 59. And the documentation Plaintiff provided—namely, the Photograph and a screengrab of the Photograph reproduced on Defendant's website—demonstrates that Defendant publicly displayed the copyrighted work and therefore infringed on Plaintiff's copyright. *See* ECF No. 1-2. Defendant's liability for copyright infringement is thus established. *See Dermanksy v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *3 (E.D.N.Y. Mar. 13, 2020).

**B. Plaintiff Pled a Viable Claim for Removal of Copyright Management Information**

Plaintiff's allegations also establish a violation of removal of copyright management information ("CMI") under 17 U.S.C. § 1202(b). Section 12(b)(3) of the DMCA provides that "no person shall, without the authority of the copyright owner or the law . . . distribute . . . works, copies of works, or phonorecords, knowing that [CMI] has been removed or altered without authority of the copyright

6

owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(3). To establish a violation of this section, a plaintiff must thus prove the following: "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)). CMI includes, *inter alia*, the title or identifying information of the work, author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information. *See* 17 U.S.C. § 1202(c)(1)–(3), (6)–(7); *see also Dermansky*, 2020 WL 1233943, *3 (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)). The Second Circuit has previously upheld a decision holding that gutter credits constitute CMI. *See Mango*, 970 F.3d at 171 n.1, 172.

The Complaint sufficiently establishes Defendant's violation of 17 U.S.C. § 1202(b)(3). The Complaint establishes the existence of CMI in connection with the Photograph by alleging that the Photograph was originally

7

published with Sipkin's name in the gutter credit and by attaching the Photograph that contains the gutter credit. Compl. ¶ 67; ECF No. 1-3. Plaintiff establishes the second element for a claim under section 1202(b)(3) by alleging that Defendant posted the Photograph to its website with no credit provided to Sipkin or Plaintiff. Compl. ¶¶ 68–69; ECF No. 1-2. Moreover, in light of the evidence that the gutter credit was displayed in the New York Post article and was removed, it can reasonably be inferred that Defendant knew that CMI had been removed or altered without Plaintiff's authority. *See McGlynn v. Towers Investors.com Inc.*, No. 19-CV-89, 2021 WL 1777758, at *4 (S.D.N.Y. May 5, 2021), *report and recommendation adopted*, June 3, 2021 ECF Order. Finally, in light of Defendant's default, Plaintiff's allegation that Defendant "had reasonable grounds to know that its distribution of the infringing article containing the Photograph would induce, enable, facilitate or conceal an infringement," Compl. ¶ 71, is deemed admitted, thus satisfying the final element, *see McGlynn*, 2021 WL 1777758, at *4. Accordingly, Plaintiff has established a violation of the DMCA.

### C. Default Judgment is Warranted

Applying the three factors discussed above, I conclude that a default judgment is warranted. First, as to willfulness, a defendant's failure to respond to a properly served complaint or otherwise appear evinces a willful default. *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *6 (E.D.N.Y. Sept. 16, 2014); *Song*

8

*v. Kensington Int'l, Inc.*, No. 21-CV-543, 2024 WL 416494, at *5 (E.D.N.Y. Jan. 29, 2024). Considering that Plaintiff sent two pre-suit letters, as well as properly served and made additional efforts to notify Defendant of this action and its progress, Defendant's default is willful. *See* Compl. ¶¶ 51–52; ECF No. 22-8. Second, with respect to meritorious defenses, defaulting defendants do not assert any defenses, and courts are therefore unable to make any determination regarding the merits of unraised defenses. *Krevat* 2014 WL 4638844, at *6. Lastly, as to prejudice to Plaintiff, because Plaintiff has pled valid claims under the Copyright Act and the DMCA and has no other recourse to recover the statutory damages that it seeks, Plaintiff would be prejudiced if this motion were denied. Plaintiff's motion for default judgment is therefore granted as to liability.

### III. Remedies

#### A. Statutory Damages for Copyright Infringement Claim

Plaintiff seeks $30,000 in statutory damages under the Copyright Act, which provides that:

> [a] copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If a plaintiff proves that the infringement was willful, courts may award up to $150,000 in statutory damages. 17 U.S.C. § 504(c)(2). Statutory

9

damages vindicate copyright protections and deter would-be infringers, and they allow plaintiffs to recover damages without providing proof of loss. *Yurman Design, Inc.*, 262 F.3d at 113–114. District courts have "wide discretion" in setting statutory damages awards. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986).

Courts in this Circuit consider the following factors to determine the amount of statutory damages for copyright infringement:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010). In factually analogous situations in recent years, the majority trend in this District has been to award much less than Plaintiff seeks, most typically between $1,000 and $5,000, with the reasoning being that a plaintiff's choice to not provide proof of damages suggests that the actual harm was *de minimis* and that an award in that range is a fair balance between deterrence and recompense for a one-time infringement of a photograph. *See, e.g.*, *Fedorova v. DML News & Ent., Inc.*, No. 23-CV-7468, 2024 WL 5119108, at *6 (E.D.N.Y. Oct. 10, 2024) (collecting cases and recommending $1,000 in statutory damages), *report and recommendation adopted*, Oct. 25, 2024 ECF Order; *Seelie v. Original Media Grp. LLC*, No. 19-CV-5643, 2020 WL 136659,

10

at *2–5 (E.D.N.Y. Jan. 13, 2020) (discussing the wide range of statutory damages awarded in similar copyright infringement default judgment decisions and awarding $5,000); *Mantel v. Smash.com Inc.*, No. 19-CV-6113, 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) ("Statutory damages need not be directly correlated to actual damages, but they 'ought to bear some relation to actual damages suffered.' . . . [t]he seeming absence of tangible harm is something the Court may consider.") (quoting *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *8 (S.D.N.Y. Mar. 29, 2017). But there are cases where more substantial statutory damages have been awarded for copyright infringements similar to the infringement at issue in the instant case. *E.g.*, *Verch v. Handsome Serv., Inc.*, No. 19-CV-5162 (E.D.N.Y. May 18, 2020) (docket order) (awarding $30,000 in statutory damages for online infringement of one photograph); *Stross v. T-N-B Marble-N-Granite LLC*, No. 19-CV-688, 2019 WL 13217306, at *3 (D. Conn. Nov. 1, 2019) (awarding $30,000 in statutory damages and noting that this award was "consistent with long-standing precedent in this Circuit where an infringement defendant has defaulted.") (quoting *Anderson v. Primera Plana NY, Inc.*, No. 17-CV-7715, 2019 1936741, at *3–4 (S.D.N.Y. Mar. 29, 2019)).

In this case, Plaintiff seeks statutory damages of $30,000 pursuant to 17 U.S.C. § 504(c) on the basis that Defendant's copyright infringement was willful and "on the understanding that this amount is statutorily permitted in such a matter;

11

would provide the restitution Plaintiff believes it deserves; and would prevent Defendant from continuing the practice of unauthorized use of copyrighted material in the future." ECF No. 23 ¶¶ 25–29. I will exercise the broad discretion afforded here to award the $30,000 in statutory damages Plaintiff seeks. Defendant's infringement is knowing and willful. Plaintiff provided pre-suit letters, along with evidence of its consistent efforts to bring Defendant to the table during this litigation, but Defendant failed to appear. *Cf. Sadowski v. Render Media Inc.*, No. 17-CV-9045, 2020 WL 1178629, at *4 (S.D.N.Y. Mar. 10, 2020) (recommending $25,000 in statutory damages as opposed to the sought $30,000 where pled facts did not suggest knowing willfulness), *report and recommendation adopted*, 2020 WL 5968668 (S.D.N.Y. Oct. 8, 2020). Additionally, Defendant's use of the Photograph without the gutter credit indicates that its infringing use of the Photograph was willful. Moreover, "Defendant's status as a publisher in online media makes its infringement more blameworthy." *Mantel*, 2019 WL 5257571, at *3. Defendant, operating in a business that necessitates copyright law compliance, has ostensibly chosen neither compliance nor respect for the legal process that ensures it. It is 2025, where malfeasance on the internet is widespread, complex, and difficult to combat. Larger awards that are still well within the statutory range are aptly strong deterrents to internet media theft, which is already difficult to bring to account, particularly when

12

it is followed by utter disregard for legal process. Given these considerations, I award Plaintiff the requested $30,000 in statutory damages.

### B. Statutory Damages for DMCA Claim

Plaintiff also seeks statutory damages in the amount of $25,000 under the DMCA. The DMCA permits a plaintiff to recover an award of statutory damages, in the range of $2,500 to $25,000, "for each violation of section 1202." 17 U.S.C. § 1203(c)(3)(B). Plaintiff may recover under the DMCA in addition to the Copyright Act because each statute "protect[s] different interests." *Agence France Presse v. Morel*, No. 10-CV-2730, 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014). In awarding statutory damages under the DMCA, courts "consider [several] factors . . . namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Id.*

Courts in this Circuit have found an award of $5,000 appropriate for violations of 17 U.S.C. § 1202(b) where there is "evidence of willfulness . . . but there is lack of evidence of direct injury." *See Mantel*, 2019 WL 5257571, at *4; *see also, e.g.*, *McGlynn*, at *6; *Stross v. T-N-B Marble-N-Granite LLC*, No. 19-CV-688, 2019 WL 13217306, *3 (D. Conn. Nov. 1, 2019). I find the reasoning reflected in these cases persuasive. The one case that Plaintiff cites to support its request for a higher award involved "circumstances of the violation" that were more egregious than the

13

violation at issue here.  In that case, the defendant posted eleven reproductions of the plaintiff's photograph on its website, removed the plaintiff's metadata from each reproduction, and added its own name and information on nine of the eleven reproductions. *See Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *2 (E.D.N.Y. Aug. 26, 2016) *report and recommendation adopted*, May 16, 2017 ECF Order.  Although there is evidence of willfulness in this case, the "circumstances" here involved only one reproduction of the Photograph and no inclusion of Defendant's own information.  Accordingly, in light of this precedent and the facts of this case, $5,000 is an appropriate award of statutory damages for the DMCA violation.

### C. Attorneys' Fees and Costs

Next, Plaintiff seeks $9,725.50 in attorneys' fees and $460.00 in costs. Specifically, the fee compensates 18.1 hours billed, including 0.9 hours billed by Craig Sanders (a partner) at $895/hour, 3.2 hours billed by Jonathan Cader (an associate who graduated law school in 2001) at $600/hour, and 14 hours billed by Dina Nouhian (an associate who graduated law school in 2012) at $500/hour.  ECF No. 22 ¶¶ 29, 31, 35; ECF No. 22-4.  The costs figure includes the $405.00 filing fee and the $55.00 cost for service of process, though the Court notes that Plaintiff's Exhibit 7 to ECF No. 22 reflects a $69.00 cost for service of process.  ECF No. 22 ¶¶ 40–41; ECF No. 22-7.

14

The Copyright Act allows for recovery of a "reasonable attorney's fee" and "full costs." 17 U.S.C. § 505. Awarding plaintiffs the filing fee (of which I can take judicial notice) and process service expenses is standard practice in these cases. *E.g.*, *Fedorova*, 2024 WL 5119108, at *8. Plaintiff is accordingly awarded $460.00 in costs.

Attorneys' fees are scrutinized more closely. "The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Wright v. Miah*, No. 22-CV-4132, 2023 WL 6219435, at *14 (E.D.N.Y. Sept. 7, 2023) (internal quotation marks omitted) (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668–69 (S.D.N.Y. 2001)), *report and recommendation adopted*, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023). The lodestar "is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Id.* (internal quotation marks omitted) (quoting *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *18 (E.D.N.Y. Oct. 1, 2019); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (explaining that a reasonable hourly rate should be determined through a "'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded

15

in prior cases and the court's own familiarity with the rates prevailing in the district'" (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005))).

Plaintiff's counsel seeks reimbursement for 18.1 hours billed on this case. This number of hours is reasonable, particularly in light of the extra work that Plaintiff's counsel undertook to comply with the Court's orders to serve Defendant via email and at their business address and to serve Defendant's prior or current counsel, in addition to effectuating service of process through the New York Secretary of State. *See Steinmetz v. Bridge Path Property Group, LLC*, No. 23-CV-8836, 2024 WL 4954049, at *11–12 (S.D.N.Y. Dec. 2, 2024) (approving 18 hours of work in copyright infringement and DMCA violation case).

As for billing rates, I find persuasive Judge Block's thorough discussion of the Eastern District of New York's forum approach to attorneys' fees and his decision to depart from the stagnant rates consistently awarded in favor of new, inflation-adjusted standards. *See Rubin v. HSBC Bank USA, NA*, 763 F.Supp.3d 233, 241–44 (E.D.N.Y. 2025). The new rates are $450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals. *Id.* at 243–44.

Craig Sanders is an experienced copyright litigator frequently appearing in this District who was recently awarded an hourly rate of $650. *Harbus v. Vosa TV Inc.*, No. 24-CV-3572, 2025 WL 1153818, at *3 (E.D.N.Y. Apr. 21, 2025). However,

16

in my discretion and "considering Sanders' experience, the relatively simple posture of this case, and the current market rates—an hourly rate of $550.00 is reasonable." *Mecea v. Yid Info Inc.*, No. 23-CV-8409, 2025 WL 926204, at *3 (E.D.N.Y. Mar. 27, 2025) (awarding Mr. Sanders $550/hour in an analogous copyright default judgment). Jonathan Cader, a senior associate, reasonably commands an hourly rate of $325. *Id.* (awarding Mr. Cader $325/hour). And Dina Nouhian reasonably commands a rate of $300.

At these reduced rates, Plaintiff is awarded a reasonable attorneys' fee of $5,735, broken down as follows:

| Biller | Hours Billed | Revised Hourly Rate | Subtotal |
| --- | --- | --- | --- |
| Craig Sanders | 0.9 | $550 | $495 |
| Jonathan Crader | 3.2 | $325 | $1,040 |
| Dina Nouhian | 14 | $300 | $4,200 |
| Total | 18.1 | | $5,735 |

## CONCLUSION

Plaintiff's motion for default judgment is granted. Plaintiff is awarded damages in the amount of $41,195, consisting of: (1) $30,000 in statutory damages for the copyright infringement claim; (2) $5,000 in statutory damages for the DMCA violation claim; (3) $5,735 in attorneys' fees; (4) and $460 in costs. Post-judgment

17

interest shall accrue pursuant to 28 U.S.C. § 1961 until the judgment is paid in full. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Brooklyn, New York
September 16, 2025

*Edward R. Korman*
Edward R. Korman
United States District Judge